## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2016**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : **Criminal No.   18-** |
| | : |
| **v.** | : **Grand Jury Original** |
| | : |
| **MH PILLARS LTD., doing business as** | : **18 U.S.C. § 371** |
| **PAYZA,** | : **(Conspiracy);** |
| | : |
| **FIROZ PATEL,** | : **18 U.S.C. § 1960(a)** |
| | : **(Operating an Unlicensed** |
| | : **Money Transmission Business);** |
| **and** | : |
| | : **18 U.S.C. § 1956 (h)** |
| **FERHAN PATEL,** | : **(Conspiracy to Launder Monetary** |
| | : **Instruments);** |
| **Defendants.** | : |
| | : **D.C. Stat. § 26-1001 (Money Transmitting** |
| | : **without a License)** |
| | : |
| | : **Forfeiture:** |
| | : |
| | : **18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(p).** |
| | : |
| | : <u>**UNDER SEAL**</u> |

## <u>INDICTMENT</u>

The Grand Jury charges that:

At times material to this Indictment:

## <u>BACKGROUND</u>

1.     The defendants, FIROZ PATEL and FERHAN PATEL, operated a money

transmitting business that operated without the necessary state licenses and knowingly

transmitted funds that were derived from illegal activity.

A. <u>Money Transmitting Businesses</u>

2.      A money transmitting business was one that transferred funds on behalf of the public by any and all means, including electronic transfers within the United States or to locations abroad.

3.      In most states or jurisdictions, operating a money transmitting businesses without a license was punishable as a misdemeanor or a felony.  The failure to obtain a license in such jurisdictions is a federal felony offense.  Under District of Columbia law, money transmission businesses had to obtain a license from the Superintendent of the Office of Banking and Financial Institutions of the District of Columbia, and the failure to do so was a felony.

4.      Federal law also required money transmitting to be registered with the Financial Crimes Enforcement Network ("FinCEN").  The failure to register with FinCEN is a federal felony offense.

5.      Federal law barred money transmitting businesses from transmitting funds that were known to be derived from a criminal offense or intended to be used to promote unlawful activity.

B. <u>Fraudulent and Criminal Money Transmitting Business Customers</u>

6.      Pyramid schemes were scams in which the organizers promised the victims profits based primarily on recruiting others to join the scheme.  Because little or no wealth was created, few or no products were sold, minimal or no investments were made, and few or no services were provided, the schemes eventually failed.  Minimal or no product Mutli-Level Marketing (a/k/a "MLM") scams and Money Cycler scams (a/k/a "Cyclers") were types of pyramid schemes.

7.      A Ponzi scheme purported to be an investment opportunity, but payouts came almost exclusively from new investor money instead of the returns of the underlying investment, if any.  Ponzi schemes inevitably collapsed as investors ran out of new victims to recruit and the underlying investment generated insufficient or no revenue to sustain the scheme.  A High Yield Investment Program (a/k/a "HYIP") was a type of Ponzi scheme.

C.   The Defendants and their Associated Entities

8.      From in or about March 2012 through the present, defendants FIROZ PATEL and FERHAN PATEL owned, controlled, managed, supervised, and directed a money transmission business, co-conspirator MH PILLARS, LTD., doing business as Payza (hereinafter co-conspirator "Payza"), which was incorporated in the United Kingdom.

9.      Defendant FIROZ PATEL is a Canadian citizen.  Defendant FIROZ PATEL acted as the Executive Vice-President of co-conspirator Payza and, in that capacity, had the authority to bind the company.

10.     Defendant FERHAN PATEL is a Canadian citizen.  Defendant FERHAN PATEL acted as the Chief Compliance Officer of co-conspirator Payza and, in that capacity, had the authority to bind the company.

11.     In addition to co-conspirator Payza, defendants FIROZ PATEL and FERHAN PATEL owned, controlled, managed, supervised, and directed co-conspirator AlertPay Inc. (hereinafter co-conspirator "AlertPay") and co-conspirator Ecommerce Worldwide, doing business as Egopay, Inc. (hereinafter co-conspirator "Egopay").  Co-conspirators AlertPay and Egopay ceased operations in or about 2012 and 2015 respectively.

12.     Co-conspirators Payza, AlertPay, and Egopay were variously touted, through their websites, as specializing in e-commerce processing, corporate disbursements, and remittances

3

for individuals and businesses around the world.  Co-conspirators Payza, AlertPay, and Egopay were in the business of transmitting funds via their websites for the public throughout the United States and elsewhere.  Defendants FIROZ PATEL and FERHAN PATEL failed to obtain licenses to operate co-conspirators Payza, AlertPay, and Egopay in the District of Columbia and in every state that required them to do so.

13.     Co-conspirators Payza, AlertPay, and Egopay transmitted funds that defendants FIROZ PATEL and FERHAN PATEL knew were derived from criminal offenses.

D.   Co-conspirator Payza's Predecessor – Operation of Co-conspirator AlertPay

14.     Defendants FIROZ PATEL and FERHAN PATEL established co-conspirator AlertPay, which was incorporated in the United States, in or about May 2005.  From on or about April 2005 to May 2012, co-conspirator AlertPay operated as an unlicensed money transmitting business.

15.     Regulators from Arkansas, Georgia, Kentucky, New Hampshire, New York, and North Dakota notified co-conspirator AlertPay about its unlicensed activity in their respective states.

16.     In 2011, an outside consultant warned defendants FIROZ PATEL and FERHAN PATEL, and other co-conspirators, known and unknown to the Grand Jury, that co-conspirator AlertPay was operating illegally without state licenses, which could lead to their arrest.

17.     Many of co-conspirator AlertPay's customers used co-conspirator AlertPay to transmit proceeds of criminal activities.

E.   Operation of Co-conspirator Payza

18.     Co-conspirator Payza began transmitting money in or about May 2012.  At or about that same time defendants FIROZ PATEL and FERHAN PATEL, and their co-

conspirators, known and unknown to the Grand Jury, transitioned co-conspirator AlertPay accounts to co-conspirator Payza.  The transition occurred in part because co-conspirator AlertPay had been revealed to have taken on customers trafficking in child pornography.  The transition also occurred because on June 7, 2012, defendant FIROZ PATEL was indicted on two counts of money laundering associated with his operation of co-conspirator AlertPay to launder illicit proceeds derived from the importation and distribution of anabolic steroids and other controlled substances.

19.     Regulators from California, Connecticut, Kansas, Kentucky, New York, Ohio, Vermont, and West Virginia contacted co-conspirator Payza about its unlicensed activity in their respective states.

20.     For example, the California Department of Financial Institutions sent co-conspirator Payza a letter dated September 13, 2012, which notified co-conspirator Payza in pertinent part:

> "YOU ARE HEREBY WARNED TO CEASE AND DESIST FROM RECEIVING MONEY IN THIS STATE FOR THE PURPOSE OF TRANSMITTING THE SAME OR ITS EQUIVALENT. FAILURE TO DO SO WILL RESULT IN APPROPRIATE ACTION BEING TAKEN."

21.     Co-conspirator Payza's customers were primarily merchants operating Ponzi and Pyramid schemes, High Yield Investment Programs, Money Cyclers, and Multi-Level Marketing schemes with no products, and the related victims of such schemes.

22.     Defendants FIROZ PATEL and FERHAN PATEL knew that many of co-conspirator Payza's customers transmitted criminally derived proceeds via co-conspirator Payza. The transmission of these funds promoted the continuation and operation of these underlying criminal schemes.

F.   Operation of Co-conspirator Egopay

23.     Defendants FIROZ PATEL and FERHAN PATEL established co-conspirator Egopay, which was incorporated in Belize, in or about May 2012.  From in or about May 2012 to in or about January 2015, co-conspirator Egopay operated as an unlicensed money transmitting business.

24.     Co-conspirator Egopay concealed its ties to defendants FIROZ PATEL and FERHAN PATEL, and co-conspirator Payza.  Co-conspirator Egopay took on a number of co-conspirator Payza's merchant-customers who were operating Ponzi and Pyramid schemes, High Yield Investment Programs, Cyclers, and Multi-Level Marketing schemes with no products.

F.   Co-conspirator Payza's Partnership with Obopay, Inc.

25.     Co-conspirator Payza entered into an agreement with Obopay, Inc. (hereinafter "Obopay") in an attempt to conceal co-conspirator Payza's unlicensed money transmitting activities.

26.     Obopay was registered with FinCEN as a money transmitting business.  Obopay was licensed as a money transmitting business in various states at various times.

27.     On March 28, 2012, Obopay entered into an agreement with co-conspirator Payza, which appointed co-conspirator Payza as an authorized delegate of Obopay.  In certain states a delegate may forgo obtaining a license if the parent company has a license to operate as a money transmitting business.

28.     The agreement specified that co-conspirator Payza would not take on a sub-delegates and would comply with all legal requirements, including, but not limited to, state money transmission laws and regulations relating to the prevention of money laundering. However, co-conspirator Payza took on a sub-delegate, co-conspirator Egopay, and co-

conspirator Payza illegally continued operating in states where Obopay did not have a license, thereby voiding the agreement with Obopay.  Co-conspirator Payza concealed from Obopay that co-conspirator Egopay was acting as a sub-delegate and that co-conspirator Payza was illegally operating without a license in numerous states.

29.     On or about June 3, 2013, Obopay severed its partnership with co-conspirator Payza.

30.     Co-conspirator Payza has continued to operate since then, without obtaining the required licenses from the relevant regulators.

## COUNT ONE

### (Conspiracy to Operate an Unlicensed Money Transmitting Business)

31.     The allegations set forth in paragraphs 1 through 30 of this Indictment are re-alleged and incorporated by reference herein.

32.     From in or before 2011, continuing at least through the date of this Indictment, within the District of Columbia and elsewhere, defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree, to commit an offense against the United States, that is to violate the prohibition against unlicensed money transmitting businesses by conducting, controlling, managing, supervising, directing, and owning unlicensed money transmitting businesses, in violation of 18 U.S.C. § 1960.

### The Object of the Conspiracy

33.     It was the object of the conspiracy to conduct, control, manage, supervise, direct, and own money transmitting businesses that operated without the requisite licenses, which transmitted funds that were known to defendants FIROZ PATEL and FERHAN PATEL, and

their co-conspirators, known and unknown to the Grand Jury, to have been derived from unlawful activity in order to promote and support that unlawful activity, in order to build the market share and profitability of their money transmitting businesses, and in order to enrich defendants FIROZ PATEL and FERHAN PATEL, and their co-conspirators, known and unknown to the Grand Jury.

**Manner and Means**

It was part of the conspiracy that:

34.     Defendants FIROZ PATEL and FERHAN PATEL, together with other co-conspirators, known and unknown to the Grand Jury, knowingly conspired to operate unlicensed money transmission businesses which transmitted over $250,000,000 throughout the United States and elsewhere.

35.     Defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, established and operated co-conspirators Payza, AlertPay, and Egopay, and additional operating and nominee companies, without the necessary licenses to do so, despite receiving notices from authorities stating that they were required to have such licenses.

36.     Defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, created and maintained websites from which they provided money transmission services to millions of customers in the United States and elsewhere.  These websites claimed to provide legitimate money transmission services. Customers set up accounts via the websites that could be used to transfer money to, and receive money from, others for a fee.

37.     Defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, opened bank accounts in the names of various companies in the United States and elsewhere, through which co-conspirators Payza, AlertPay, and Egopay would transmit customer funds and the proceeds generated by these unlicensed money transmitting businesses.

38.     Defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, sought, obtained, and provided money transmission services to customers who were engaged in criminal activities, including operating Ponzi and pyramid schemes, and distribution of child pornography and controlled substances.

39.     Defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, attempted to conceal their conduct by, among other things:

    a.  Creating customer lists that did not include customers of co-conspirator Payza known to be engaged in criminal activities;

    b.  Creating customer lists that omitted customers in jurisdictions where co-conspirator Payza was operating without a license;

    c.  Transferring criminal customers from co-conspirator AlertPay to co-conspirator Payza, and later from co-conspirator Payza to co-conspirator Egopay; and

    d.  Hiding co-conspirator Payza's connection to co-conspirator Egopay.

**Overt Acts in Furtherance of the Conspiracy**

40.     In furtherance of the conspiracy and to effect the object of such conspiracy, defendants FIROZ PATEL and FERHAN PATEL and co-conspirators, known and unknown to

the Grand Jury, committed the following overt acts, among others, in the District of Columbia

and elsewhere:

    A.  <u>Establishment and Operation of Unlicensed Money Transmitting Businesses</u>

        1)      In or about October 2011, defendant FERHAN PATEL informed a co-conspirator that co-conspirator AlertPay would not shutdown operation in the United States, in spite of an outside consultant warning defendants FIROZ PATEL and FERHAN PATEL to cease all money transmission business, because operating co-conspirator AlertPay without state licenses was a crime.

        2)      On or about February 2, 2012, defendant FERHAN PATEL paid to register Payza.com, which was the website customers used to access Payza.

        3)      In or about May 2012, defendant FIROZ PATEL caused co-conspirator Egopay to be incorporated in Belize.

        4)      On or about September 27, 2012, defendant FERHAN PATEL directed certain co-conspirators to collect transactional data for customers in three states in which co-conspirator Payza did not have a license to operate.

        5)      On or about January 8, 2013, after co-conspirator Payza had received a cease and desist letter from the California regulator, a co-conspirator informed another co-conspirator that co-conspirator Payza was "not a licensed money transmitter in California."

6)      On or about April 6, 2013, defendant FERHAN PATEL directed a co-
conspirator to share with Obopay only co-conspirator Payza's
transactional data for the states where Obopay was licensed.

7)      On or about May 1, 2013, a co-conspirator informed another co-
conspirator that co-conspirator Egopay was an unlicensed money
transmitting business.

8)      On or about May 10, 2013, a co-conspirator informed defendants FIROZ
PATEL and FERHAN PATEL that Obopay had "officially asked that we
cease activity in states where they are unlicensed."

9)      On or about May 29, 2103, defendant FERHAN PATEL informed
defendant FIROZ PATEL that co-conspirator Egopay was "not licensed
anywhere."

B.  Transmission of Criminally Derived Funds and Concealment of Such Activities

10)     On or about July 15, 2012, defendant FIROZ PATEL directed a co-
conspirator to provide a list of co-conspirator Payza's customers that
pursuant to defendant FIROZ PATEL's and certain co-conspirators'
instructions had moved from co-conspirator Payza to co-conspirator
Egopay.

11)     On or about July 17, 2012, defendants FIROZ PATEL, FERHAN PATEL,
and certain co-conspirators exchanged draft correspondence directing co-
conspirator Payza's high-risk and criminal customers to transition their
accounts maintained at co-conspirator Payza to co-conspirator Egopay.

12)     On or about July 20, 2012, defendant FIROZ PATEL approved a co-conspirator's request to transfer $1,500,000 from Ponzi Scheme 1's account at co-conspirator Payza to an account at co-conspirator Egopay.

13)     On or about December 20, 2012, defendant FERHAN PATEL informed a co-conspirator that defendant FERHAN PATEL and co-conspirators, known and unknown to the Grand Jury, had been referring High Yield Investment Programs to co-conspirator Egopay.

14)     On February 1, 2013, a co-conspirator requested another co-conspirator to produce a "heavily sanitized" list of co-conspirator Payza's customers, taking "out anything pharma, adult, mlm (only select high end mlm)."

15)     On March 27, 2013, defendant FERHAN PATEL informed defendant FIROZ PATEL that co-conspirator Egopay failed to conduct required customer due diligence, which created "obvious laundering concerns."

16)     On or about April 5, 2013, defendant FERHAN PATEL stated to a co-conspirator that two high-risk merchants should not be included in a customer transactional report co-conspirator Payza was sending to Obopay.

17)     On or about May 31, 2013, defendant FERHAN PATEL directed a co-conspirator to provide a "cleaned up merchant list," with "[n]othing sketchy in there please."

18)     On or about May 31, 2013, a co-conspirator informed defendant FERHAN PATEL that the co-conspirator was going through the merchant list "to identify any merchants who have gross violations such as adult, gambling,

drugs, violence etc.  And what I think is the tricky part: Identify MLM's that are set up as obvious illegal Pyramid schemes."

C.  Sample Financial Transactions Conducted by Certain Co-conspirators

19)     On or about July 12, 2011, defendant FIROZ PATEL caused a bank account ending in xxxxxxxx2512 to be opened in the United States in the name of a company associated with co-conspirator AlertPay.

20)     On or about September 9, 2011, defendant FIROZ PATEL caused a bank account ending in xxxxxxxx4251 to be opened in the United States in the name of a third-party company controlled by defendant FIROZ PATEL.

21)     On or about May 18, 2012, defendant FIROZ PATEL caused a bank account ending in xxxxxxxx5648 to be opened in the United States in the name of a company associated with co-conspirator Payza.

22)     On or about July 24, 2012, defendant FIROZ PATEL caused a bank account ending in xxxxxxxx2343 to be opened in the United States in the name of a third-party company controlled by defendant FIROZ PATEL.

23)     On or about September 5, 2012, co-conspirator Payza caused the bank account ending in xxxxxxxx2512 located in the United States to wire $9,000,000.00 to a bank account located in Canada, which was associated with defendants FIROZ PATEL and FERHAN PATEL.

24)     On or about November 15, 2012, co-conspirator Payza caused the bank account ending in xxxxxxxx2343 located in the United States to wire $4,000,000.00 to a bank account ending in xxxxxxxx9940 located in

Canada, which was associated with defendants FIROZ PATEL and

FERHAN PATEL.

25)    On or about December 3, 2012, co-conspirator Payza caused

$7,999,990.00 to be wired from a bank account ending in xxxxxxxx2008

located in Canada, which was associated with defendants FIROZ PATEL

and FERHAN PATEL, to the bank account ending in xxxxxxxx2343

located in the United States.

26)    On or about January 23, 2013, co-conspirator Payza caused $1,310,234.31

to be wired from a bank account ending in xxxxxxxx2008 located in

Canada, which was associated with defendants FIROZ PATEL and

FERHAN PATEL, to the bank account ending in xxxxxxxx5648 located

in the United States.

27)    On or about April 15, 2013, co-conspirator Payza caused $1,699,975.00 to

be wired from a bank account ending in xxxxxxxx4713 located in Canada,

which was associated with defendants FIROZ PATEL and FERHAN

PATEL, to the bank account ending in xxxxxxxx2343 located in the

United States.

28)    On or about May 1, 2013, co-conspirator Payza caused $599,975.00 to be

wired from a bank account ending in xxxxxxxx4713 located in Canada,

which was associated with defendants FIROZ PATEL and FERHAN

PATEL, to the bank account ending in xxxxxxxx2343 located in the

United States.

29)     On or about January 28, 2014, co-conspirator Payza caused $248,700.00
        to be wired from a bank account ending in xxxxxxxx2564 located in
        Canada, which was associated with defendant FERHAN PATEL, to the
        bank account ending in xxxxxxxx4251 located in the United States.

D.  Sample Transactions of Customers Transmitting Funds

30)     On or about January 10, 2012, co-conspirator Payza caused a transfer of
        approximately $100.00 from a customer in Washington, D.C., to another
        co-conspirator Payza account.

31)     On or about March 7, 2012, co-conspirator Payza caused a transfer of
        approximately $200.00 from a customer without a verified address to
        another co-conspirator Payza account.

32)     On or about September 19, 2012, co-conspirator Payza caused a transfer
        of approximately $10.00 from a customer in Washington, D.C., to another
        co-conspirator Payza account.

33)     On or about September 20, 2012, co-conspirator Payza caused a transfer
        of approximately $12,053.00 from a customer in Georgia to another co-
        conspirator Payza account.

34)     On or about December 12, 2012, after co-conspirator Payza had received a
        cease and desist letter from California, co-conspirator Payza caused a
        transfer of approximately $10,500.00 from a customer in California to
        another co-conspirator Payza account.

35)     On or about March 6, 2013, co-conspirator Payza caused a transfer of approximately $19.12 from a customer in California to another co-conspirator Payza account.

36)     On or about June 24, 2013, co-conspirator Payza caused a transfer of approximately $15,000.00 from a customer in New York to another co-conspirator Payza account.

37)     On or about January 29, 2015, co-conspirator Payza caused a transfer of approximately $300.00 from a customer in Washington, D.C., to another co-conspirator Payza account.

38)     On or about March 9, 2016, co-conspirator Payza caused a transfer of approximately $2,966.40 from a customer in California to another co-conspirator Payza account.

39)     On or about March 13, 2016, co-conspirator Payza caused a transfer of approximately $1,000.66 from a customer in Pennsylvania to another co-conspirator Payza account.

40)     On or about March 22, 2016, co-conspirator Payza caused a transfer of approximately $260.77 from a customer in Vermont to another co-conspirator Payza account.

41)     On or about April 6, 2016, co-conspirator Payza caused a transfer of approximately $937.18 from a customer in Vermont to another co-conspirator Payza account.

42)     On or about April 18, 2016, co-conspirator Payza caused a transfer of approximately $444.96 from a customer in Kansas to another co-conspirator Payza account.

43)     On or about June 28, 2016, co-conspirator Payza caused a transfer of approximately $208.74 from a customer in Vermont to another co-conspirator Payza account.

44)     On or about July 12, 2016, co-conspirator Payza caused a transfer of approximately $4,839.52 from a customer in New York to another co-conspirator Payza account.

45)     On or about July 16, 2016, co-conspirator Payza caused a transfer of approximately $273.26 from a customer without a verified address to another co-conspirator Payza account.

46)     On or about July 20, 2016, co-conspirator Payza caused a transfer of approximately $1,353.43 from a customer in Pennsylvania to another co-conspirator Payza account.

47)     On or about April 26, 2017, co-conspirator Payza caused a transfer of approximately $109.20 from a customer in Washington, D.C., to another co-conspirator Payza account.

48)     On or about May 10, 2017, co-conspirator Payza caused a transfer of approximately $98.00 from an agent acting in an undercover capacity in Washington, D.C., to another co-conspirator Payza account.

**(Conspiracy to Commit an Offense Against the United States, in violation of Title 18, United States Code, Section 371)**

## COUNT TWO
### (Conspiracy to Launder Monetary Instruments)

41.     Paragraphs 1 through 30 and 34 through 40 of this Indictment are re-alleged as if fully set forth herein.

42.     From in or before 2011, continuing through the date of this indictment, within the District of Columbia and elsewhere, the defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree, to violate Title 18, United States Code, Section 1956(h).

### The Object of the Conspiracy

43.     It was the object of the conspiracy for defendants FIROZ PATEL and FERHAN PATEL, together with co-conspirators, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1956(a)(2)(A), that is, by transporting, transmitting, or transferring, or attempting to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States, that is Canada and other countries, and to a place in the United States from or through a place outside the United States, that is Canada and other countries, with the intent to promote the carrying on of specified unlawful activity, that is, an offense under Section 1960, relating to illegal money transmitters, and an offense under Section 1343, relating to wire fraud.

**(Conspiracy to Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h)).**

18

## COUNT THREE
**(Operation of an Unlicensed Money Transmitting Business)**

44.     Paragraphs 1 through 30 and 34 through 40 of this Indictment are re-alleged as if fully set forth herein.

45.     From in or before May 2012, continuing through the date of this indictment, within the District of Columbia and elsewhere, the defendant MH PILLARS, LTD., doing business as PAYZA, knowingly conducted, controlled, managed, supervised, and directed an unlicensed money transmitting business, that is, MH PILLARS, LTD., doing business as PAYZA, which affected interstate and foreign commerce in any manner or degree.

46.     The defendant MH PILLARS, LTD., doing business as PAYZA, operated MH PILLARS, LTD., doing business as PAYZA without obtaining an appropriate money transmitting license in the District of Columbia, where such operation was punishable as a misdemeanor or a felony.

47.     The defendant MH PILLARS, LTD., doing business as PAYZA, transported and transmitted funds that were known to the defendant MH PILLARS, LTD., doing business as PAYZA, to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity.

**(Operation of an Unlicensed Money Transmission Business, in violation of Title 18, United States Code, Section 1960(a))**

## COUNT FOUR
**(Operation of an Unlicensed Money Transmission Business)**

48.     Paragraphs 1 through 30 and 34 through 40 of this Indictment are re-alleged as if fully set forth herein.

49.     From in or about January 2011, continuing at least through the date of this Indictment, within the District of Columbia, the defendants FIROZ PATEL and FERHAN PATEL,

did, without obtaining a license issued by the Superintendent of the Office of Banking and

Financial Institutions of the District of Columbia, engage in the business of receiving money for

transmission and transmitting money within the United States, and to locations abroad, by any and

all means, including but not limited to wire and electronic transfer.

**(Money Transmission without a License, in violation of 26-1002 of the D.C. Code)**

## FORFEITURE ALLEGATION

1.      Upon conviction of any of the offenses alleged in Counts One, Two and/or Three,

the defendants shall forfeit to the United States any property, real or personal, involved in these

offenses, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).  The

United States will seek a forfeiture money judgment against the defendants equal to the value of

any property, real or personal, involved in Counts One, Two and Three, and any property

traceable to such property.

2.      The grand jury finds by probable cause that the specific property subject to

forfeiture includes:

      a.      $4,000,100 of Payza funds seized on or about November 2013;

      b.      $100,000 of Payza funds seized on or about February 2014;

      c.      $250,000 of Payza funds seized on or about June 2016;

      d.      all funds restrained on or about December 2016 in the United Kingdom
            from an account at Global Reach Partners related to Payza;

      e.      all funds restrained on or about June 2017 in the United Kingdom from an
            account at HSBC bank related to Payza;

      f.      the Payza.com domain; and

      g.      the AlertPay.com domain

3.      If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendants:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred or sold to, or deposited with, a third party;

c.       has been placed beyond the jurisdiction of the Court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property that cannot be divided without

difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1); and Title 21, United States Code, Section 853(p)).**

A TRUE BILL

FOREPERSON

Attorney of the United States in
and for the District of Columbia