**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 18-cr-053 (KBJ)** |
| | : | |
| **MH PILLARS, dba PAYZA,** | : | **Criminal Case No. 20-cr-113 (KBJ)** |
| | : | |
| **FIROZ PATEL,** | : | |
| | : | |
| **FERHAN PATEL,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this memorandum to assist the Court in sentencing and to recommend the following sentences, consistent with the parties' plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure: 1) For defendant MH Pillars, dba Payza – Three years of corporate probation, a $400 special assessment, and forfeiture of all seized/restrained funds; 2) for Defendant Firoz Patel – 52 months imprisonment, a special assessment of $200, three years of supervised release, and forfeiture of all seized/restrained funds; and 3) for Defendant Ferhan Patel – 24 months imprisonment, a special assessment of $100, three years of supervised release, and forfeiture of all seized/restrained funds.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the agreed-upon factual proffer in support of the guilty pleas in this case, in or about 2004, Firoz Patel and Ferhan Patel founded AlertPay in Montreal, Canada.  AlertPay acted as an online money transmitting business.  Many of the merchants that AlertPay accepted as customers did not go through a full compliance review.  Firoz Patel and Ferhan Patel knew that

AlertPay was transmitting the illegal proceeds of multi-level marketing fraud schemes ("MLMs"), Cyclers, pyramid schemes, and Ponzi schemes as customers and were thus aware of this illegal money laundering.  In addition, Firoz Patel and Ferhan Patel were participating as customers in at least one of the Ponzi schemes for which AlertPay was providing money transfer services.

AlertPay had been processing transactions for a steroids distributor for several years.  That distributor utilized several internet websites to advertise and sell anabolic steroids.  As early as 2006, these websites instructed customers to pay for their drug orders via online transfers using AlertPay because it was not as cooperative with law enforcement as other money remitters.  By 2008, this distributor was selling over $500,000.00 worth of illegal steroids a month.  The distributor used AlertPay to launder the proceeds of his illegal steroid sales.  For example, between July 20, 2006 and July 9, 2008, the distributor made at least eighteen wire transfers totaling $766,827.49 from his AlertPay accounts to offshore Austrian bank accounts.  Firoz Patel knew that the funds AlertPay was processing were proceeds from the sales of steroids.  Firoz Patel personally directed transfers of money for the distributor.  Ultimately, Firoz Patel was indicted in the Middle District of Tennessee for money laundering based on AlertPay's active facilitation of the illegal sale of steroids.

AlertPay did not have a license to operate in any state in the United States or the District of Columbia. In spite of this lack of licensure, AlertPay offered its services in virtually every state in the United States and the District of Columbia.  Firoz Patel and Ferhan Patel were aware that AlertPay received a cease and desist letter from regulators in New Hampshire.  They ignored the cease and desist letter.  Firoz Patel and Ferhan Patel also knew that Alert Pay received numerous cease and desist letters from other state regulators.  In response to these letters, Firoz Patel and Ferhan Patel caused Alert Pay to disable new customer sign-ups from those states, but otherwise

2

continued to provide money laundering services to their existing customers.  This plan concealed AlertPay's unlicensed activity from state regulators, who often conducted spot tests by attempting to sign up as a new customer after sending a cease and desist letter.

In 2011, AlertPay hired a U.S. compliance company to conduct an audit of AlertPay regarding compliance issues, including licensing deficiencies. The consultants told Firoz Patel and Ferhan Patel that AlertPay was illegally operating without a license in at least 45 states and the District of Columbia.  The consultants also warned them that AlertPay must immediately shut down all U.S. operations, because they were violating U.S. law.  Firoz Patel and Ferhan Patel did not follow that advice and continued to operate without the required licenses.  On November 9, 2011, one of the consultants emailed Firoz Patel, that AlertPay was operating in violation of at least five cease and desist orders from state regulators, and that the consultant could not work with Firoz Patel any further due to these criminal violations.  Firoz Patel ultimately terminated the contract with the consultants.  AlertPay conducted hundreds of millions of dollars in unlicensed transactions.

In early 2012, Firoz Patel purchased MH Pillars.  MH Pillars, doing business as Payza, claimed to have purchased AlertPay and AlertPay accounts were transitioned to Payza accounts. Firoz Patel was listed as the Executive Vice President of Payza, however, he was the most senior person at the company and ultimately, all employees reported to him.  Ferhan Patel was listed as the President of MH Pillars and was the Executive Vice President of Marketing and eventually became the Chief Compliance Officer of Payza.

Obopay, Inc. ("Obopay") was an internet-based payment platform that specialized in mobile banking through the use of cellular phones or other portable devices. Obopay was registered with FinCEN as a money transmitting business and was licensed as a money

transmitting business in approximately 40 states at the end of 2012.  On March 28, 2012, Obopay entered into an agreement with MH Pillars under which Payza became an authorized delegate of Obopay.  Prior to entering into the agreement with Obopay, AlertPay/Payza illegaly transmitted at least $10,000,000.

Firoz Patel and Ferhan Patel knew which states Payza could not operate in; however, they disregarded this legal prohibition, including after receiving cease and desist orders.  For example, California regulators sent Payza a cease and desist letter in September 2012, ordering Payza to cease all operations there.  Despite receiving this letter, Payza continued to operate there and in October 2012 alone, Payza sent/received approximately $1,156,412 for customers in California for which it collected $27,856 in fees.  All of these transactions were in violation of the cease and desist order.

Payza would sanitize customer lists being provided to Obopay, so as to remove known illegal merchants, including various Ponzi Schemes.  On or about May 10, 2013, Firoz Patel and Ferhan Patel received an email from Obopay asking Payza to cease activity in states where Obopay was not licensed.  Payza refused to end such unlicensed activity.   On or about June 3, 2013, Obopay severed its partnership with Payza.  From at least July 2011 to March 2013, AlertPay/ Payza transmitted millions of dollars from the United States to Canada and from Canada to the United States.

Payza struggled to maintain its relationship with financial institutions that it needed to facilitate payment processing, because Payza so frequently was found to have customers engaged in illegal activity.   Firoz Patel and Ferhan Patel decided to create a new company to which all of Payza's high risk income programs would be moved.  This new company was Egopay.  In or about May 2012, a co-conspirator registered Egopay under the name of E-Commerce Worldwide in

Belize.  Ferhan Patel gave that coconspirator a Payza-branded prepaid card to pay for the registration of Egopay.  Once Egopay started taking on customers, the list of merchants Payza moved to Egopay was expanded to include additional high-risk customers.  Like Payza, Egopay did not collect any customer due diligence data thus continuing the money laundering activity that Payza had engaged in.  Like Payza, EgoPay continued to act as a money service business in the United States without being licensed by individual States, including the District of Columbia. Ultimately Egopay was shut down by regulators in Belize, after which Payza began again directly servicing many of Egopay's customers.

One of the Ponzi schemes that that used Payza to launder its illegal proceeds was "Ponzi Scheme 1."  Firoz Patel and Ferhan Patel were aware that Ponzi Scheme 1 was a Ponzi scheme. Ponzi Scheme 1 used Payza and Egopay to defraud its customers and promote its illegal activities by transmitting payments to and from victims of this scheme, and by allowing its operator to transmit funds for his own enrichment.  In early 2012, Payza's European payment processor questioned Payza about Ponzi Scheme 1.  The payment processor became aware of Ponzi Scheme 1 because customers were complaining about the merchant.  In the summer of 2012, the European payment processor again inquired whether Payza had stopped doing business with Ponzi Scheme 1, because Ponzi Scheme 1 had been blacklisted by securities agencies as an illegal investment scheme.  Despite learning of this development, neither Firoz Patel nor Ferhan Patel shut down Payza's business with Ponzi Scheme 1.  After Ponzi Scheme 1 was ultimately shut down by regulators, Firoz Patel and Ferhan Patel transitioned Ponzi Scheme 1's business to Egopay, thus allowing Ponzi Scheme 1 to continue operating.  Firoz Patel personally authorized the transfer of $1.5 million of Ponzi Scheme 1's criminal proceeds to Egopay.   Payza made approximately $58,000 in fees by moving Ponzi Scheme 1 to Egopay.

Another Ponzi scheme that used Payza to launder its proceeds was Ponzi Scheme 2.  Firoz Patel and Ferhan Patel were aware that Ponzi Scheme 2 was a Ponzi scheme.  Firoz Patel and Ferhan Patel allowed Ponzi Scheme 2 to transmit its illegal proceeds via Payza.  Ponzi Scheme 2 used Payza to defraud its customers and promote its illegal activities by transmitting payments to and from victims of the scheme, and by allowing its operator to transmit funds for his own enrichment.  On or about August 17, 2012, the Securities and Exchange Commission ("SEC") filed a civil complaint in the United States District Court for the Western District of North Carolina against Ponzi Scheme 2 and its operator for the operation of an estimated $600,000,000 Ponzi and pyramid scheme.  Payza received a copy of this complaint.  AlertPay and Payza collectively processed approximately $340 million worth of transactions related to Ponzi Scheme 2 before it was shut down.

The defendants were indicted in the case at bar in 2018.  Ferhan Patel first appeared before this Court in April 2018 and Firoz Patel made his initial appearance in January 2019.  The government worked diligently to assure that discovery was provided and that the defendants understood the scope of the evidence collected by the government.  After thoroughly reviewing that trove of evidence, the defendants pled guilty on July 20, 2020.

II.     **DEFENDANTS' SENTENCING GUIDELINES CALCULATION**

    A.     **Defendant MH Pillars, dba Payza**

Defendant Payza pled guilty to a single count of Conspiracy to Commit Crimes against the United States, in violation of 18 U.S.C. § 371.  This offense carries a fine of $500,000, or a fine of twice the gross gain or gross loss, whichever is greater, pursuant to 18 U.S.C. § 3571(c)(3) and (d).  Payza may also be subject to a term of corporate probation of not less than one year and not more than five years pursuant to 18 U.S.C. § 3561.  The Court may also order restitution pursuant to 18 U.S.C. § 3663.  Payza is also obligated to pay a special assessment of $400 for its felony conviction to the Clerk of the United States District Court for the District of Columbia.

Under the Sentencing Guidelines, the sentence in this case would be determined pursuant to the factors set forth in U.S.S.G. Chapter Eight, Part C, because the offense conduct to which Payza is pleading guilty is covered by U.S.S.G. § 2B1.1, Offenses Involving Fraud, and that Guideline is listed under U.S.S.G. § 8C2.1 which governs criminal fines for organizations. Pursuant to U.S.S.G. § 2B1.1(a)(2), the Base Offense Level is 6; pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the offense involves more than $250,000,000, 28 levels are added; pursuant to U.S.S.G. § 2B1.1(b)(10)(B), because a substantial part of a fraudulent scheme was committed outside the United States, two levels are added.  As such, the total estimated Offense Level would be at least 36.  Defendant Payza is not eligible for a reduction for acceptance of Responsibility because of  U.S.S.G. § 8C2.3 Application Note 2 ("In determining the offense level under this section, apply the provisions of §§1B1.2 through 1B1.8.  Do not apply the adjustments in Chapter Three, Parts A (Victim-Related Adjustments), B (Role in the Offense), C (Obstruction and Related Adjustments), and E (Acceptance of Responsibility).") However, Defendant Payza does receive the benefit of a lowered culpability score per § 8C2.5.

Based upon an Estimated Offense Level of 36, pursuant to U.S.S.G. §§ 8A1.2(b)(2), 8C2.1(a), 8C2.3, 8C2.4(a)(1) and (d), 8C2.5(a) & (g)(2), 8C2.6, and 8C2.7(a)-(b), the estimated Sentencing Guidelines fine range would be $60,000,000 to $120,000,000 (the "Estimated Guidelines Range").  That estimate is based on, *inter alia*:

- A base fine of $150,000,000, pursuant to U.S.S.G. § 8C2.4(d);

- A culpability score of 2, pursuant to U.S.S.G. § 8C2.5(a) = (+5), (g)(2) = (-2), & (g)(3) = (-1), reflecting:

    o a subtraction of 2 culpability points on the ground that the organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct, and

- Minimum and maximum multipliers of 0.40-0.80, pursuant to U.S.S.G. § 8C2.6.

The government agreed (based upon the factors set forth in paragraph 109 of the draft Presentence report) to not recommend a fine.

### B.   **Defendant Firoz Patel**

Firoz Patel pled guilty in Criminal Case No. 18-053 to Conspiring to Commit Offenses against the United States, in violation of 18 U.S.C. § 371.  Additionally, pursuant to Rule 20 of the Federal Rules of Criminal Procedure, he agreed to a transfer of venue in Criminal Case No. 3:10-211, filed in the Middle District of Tennessee, to the District of Columbia.  Specifically, in Criminal Case No. 20-113 in our jurisdiction, he pled guilty to count four of that Indictment, which charged him with Conspiring to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h).

A violation of 18 U.S.C. § 371 carries a maximum sentence of five years of imprisonment; a fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3); and a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2).  A violation of 18 U.S.C. § 1956(h) carries a maximum sentence of 20 years of imprisonment; a fine of $500,000 or twice the value of the monetary instrument or funds involved in the offense, pursuant to 18 U.S.C. § 1956(a)(2); and a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2).

The parties agreed that under the Sentencing Guidelines, pursuant to U.S.S.G. § 2S1.3(a)(2), the charge of conspiracy to commit offenses against or to defraud the United States, in violation of 18 U.S.C. § 371, and operation of an unlicensed money service business, in violation of 18 U.S.C. § 1960, carries a base offense level of six. Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the offense involves more than $250,000,000, but less than $550,000,000, 28 levels are added.  Pursuant to U.S.S.G. § 2S1.3(b), because Firoz Patel knew that the funds were proceeds of unlawful activity and were intended to promote unlawful activity, two points are added. Pursuant to U.S.S.G. § 3B1.1, because Firoz Patel was an organizer and leader of criminal activity that involved five or more participants, four levels are added.  This results in an adjusted offense level of 40.

The parties agreed that under the Sentencing Guidelines, pursuant to U.S.S.G. § 2S1.1(a)(2), the charge of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) carries a base offense level of eight.  Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the offense involves more than $250,000,000, but less than $550,000,000, 28 levels are added. Pursuant to U.S.S.G. § 2S1.3(b)(2)(C), because Firoz Patel agreed that Payza was in the business of laundering funds, four points are added.  Pursuant to U.S.S.G. § 3B1.1, because Firoz Patel was an organizer and leader of a criminal activity that involved five or more participants, four levels are added.  This results in an adjusted offense level of 44.

The draft presentence report also added: 1) six levels pursuant to U.S.S.G. § 2B1.1(b)(A)and (B) because Firoz Patel knew or believed that the laundered funds associated with Count Four of the Tennessee Indictment were the proceeds of, or were intended to promote the illegal distribution of steroids; and two levels pursuant to U.S.S.G. § 2S1.1(b)(3) because the offense involved sophisticated money laundering.  Therefore, according to the draft presentence report, the adjusted offense level is 52.

Pursuant to § 3D1.2(a) of the Sentencing Guidelines, the offenses to which Firoz Patel has pled guilty are closely related.  Pursuant to §3D1.3(a), the offense level applicable is the highest offense level of the counts in the group.  The parties agreed in the plea agreement that Firoz Patel's offense level is 43, as the Sentencing Guidelines cap out at 43.  The draft presentence report calculated an adjusted offense level of 52.

After a reduction of three points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement calculated a total offense level of 40 and the draft presentence report a total offense level of 49.  This was reduced to a level 43 pursuant to U.S.S.G. § 5A1.1, comment 2.

Firoz Patel has a criminal history score of zero, thus placing him in Criminal History Category I.  The parties estimated based upon an adjusted offense level of 40, that the defendant's guidelines would be 292 to 365 months.  The draft presentence report calculated the defendant's guideline sentence would be life.  The statutory maximum for the section 371 charge is 60 months and the statutory maximum for the section 1956 charge is 240 months.

### C.      **Defendant Ferhan Patel**

Ferhan Patel pled guilty to conspiring to commit offenses against the United States, in violation of 18 U.S.C. § 371.  A violation of 18 U.S.C. § 371 carries a maximum sentence of five years of imprisonment; a fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3); and a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2).

The parties agreed that under the Sentencing Guidelines, pursuant to U.S.S.G. § 2S1.3(a)(2), the charge of conspiracy to commit offenses against or to defraud the United States, in violation of 18 U.S.C. § 371, and operation of an unlicensed money service business, in violation of 18 U.S.C. § 1960, carries a base offense level of six. Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the offense involves more than $250,000,000, but less than $550,000,000, 28 levels are added.  Pursuant to U.S.S.G. § 2S1.3(b), because Ferhan Patel knew that the funds were proceeds of unlawful activity and were intended to promote unlawful activity, two points are added. Pursuant to U.S.S.G. § 3B1.1, because Ferhan Patel was an organizer and leader of a criminal activity that involved five or more participants, four levels ae added.  This results in an adjusted offense level of 40.

The parties agreed that under the Sentencing Guidelines, pursuant to U.S.S.G. § 2S1.1(a)(2), the charge of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) carries a base offense level of eight.  Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the offense involves more than $250,000,000, but less than $550,000,000, 28 levels are added. Pursuant to U.S.S.G. § 2S1.3(b)(2)(C), because Ferhan Patel agreed that Payza was in the business of laundering funds, four points are added.  Pursuant to U.S.S.G. § 3B1.1, because Ferhan Patel was an organizer and leader of a criminal activity that involved five or more participants, four levels are added.  This results in an adjusted offense level of 44.

The draft presentence report also added: 1) six levels pursuant to U.S.S.G. § 2B1.1(b)(A)and (B) because Ferhan Patel knew or believed that the laundered funds were the proceeds of, or were intended to promote the illegal distribution of steroids;[1] and two levels pursuant to U.S.S.G. § 2S1.1(b)(3) because the offense involved sophisticated money laundering. Therefore, according to the draft presentence report, arrived at an adjusted offense level of 52.

Pursuant to § 3D1.2(a) of the Sentencing Guidelines, the offenses to which Ferhan Patel has pled guilty are closely related.  Pursuant to §3D1.3(a), the offense level applicable is the highest offense level of the counts in the group.  The parties agreed in the plea agreement that Ferhan Patel's offense level is 43, as the Sentencing Guidelines cap out at 43.  The draft presentence report calculated an adjusted offense level of 52.

After a reduction of three points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement calculated a total offense level of 40 and the draft presentence report a total offense level of 49.  This was reduced to a level 43 pursuant to U.S.S.G. § 5A1.1, comment 2.

---

[1]     This adjustment is not applicable to this defendant.  The parties have explained to the

Ferhan Patel has a criminal history score of zero, thus placing him in Criminal History Category I. The parties estimated based upon an adjusted offense level of 40, that the defendant's guidelines would be 292 to 365 months. The draft presentence report calculated the defendant's guideline sentence would be life. The statutory maximum for the section 371 charge is 60 months and the statutory maximum for the section 1956 charge is 240 months.

## III. RULE 11(c)(1)(C) AGREEMENTS OF THE PARTIES

The United States and Defendant Payza agreed to the following sentence pursuant to Rule 11(c)(1)(C): 1) a period of three years of corporate probation; 2) a special assessment of $400; and 3) the criminal forfeiture of all seized/restrained funds, which properties include – a) approximately $4,000,100 of Payza funds seized in or about November 2013; b) approximately $100,000 of Payza funds seized in or about February 2014; c) approximately $250,000 of Payza funds seized in or about June 2016; d) all funds restrained in or about December 2016 in the United Kingdom from an account at Global Reach Partners related to Payza; e) all funds restrained in or about June 2017 in the United Kingdom from an account at HSBC bank related to Payza; f) $270,000 of Payza funds seized in or about April 2019; g) the Payza.com domain; and h) the AlertPay.com domain.

The United States and Defendant Firoz Patel agreed to the following sentence pursuant to Rule 11(c)(1)(C): 1) 20 to 52 months of incarceration; 2) one to three years of supervised release; and 3) the criminal forfeiture of all seized/restrained funds, which properties include – a) approximately $4,000,100 of Payza funds seized in or about November 2013; b) approximately $100,000 of Payza funds seized in or about February 2014; c) approximately $250,000 of Payza

---

PSR writer that this adjustment does not apply to Ferhan Patel on the facts of this case. As such, the parties anticipate the PSR writer will not include this adjustment in the final PSR.

funds seized in or about June 2016; d) all funds restrained in or about December 2016 in the United Kingdom from an account at Global Reach Partners related to Payza; e) all funds restrained in or about June 2017 in the United Kingdom from an account at HSBC bank related to Payza; f) $270,000 of Payza funds seized in or about April 2019; g) the Payza.com domain; and h) the AlertPay.com domain.

The United States and Defendant Ferhan Patel agreed to the following sentence pursuant to Rule 11(c)(1)(C): 1) 12 to 36 months of incarceration; 2) one to three years of supervised release; and 3) the criminal forfeiture of all seized/restrained funds, which properties include – a) approximately $4,000,100 of Payza funds seized in or about November 2013; b) approximately $100,000 of Payza funds seized in or about February 2014; c) approximately $250,000 of Payza funds seized in or about June 2016; d) all funds restrained in or about December 2016 in the United Kingdom from an account at Global Reach Partners related to Payza; e) all funds restrained in or about June 2017 in the United Kingdom from an account at HSBC bank related to Payza; f) the Payza.com domain; and g) the AlertPay.com domain.

## IV.   SENTENCING RECOMMENDATION

### A.  Sentencing Factors

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory.  However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

Next, the Court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. at 49-50. The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in section 3553(a). *United States v. Rita*, 551 U.S. 338, 347-351 (2007). The section 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense.[2] *See* 18 U.S.C. § 3553(a)(1)-(7).

## B. Sentencing Recommendation

Consistent with the Rule 11(c)(1)(C) pleas, the government recommends that the Court accept the proposal of the parties and sentence the Defendants as proposed. The government believes that the proposed sentences reflect the seriousness of the Defendants' conduct as well as the history and characteristics of the Defendants, and at the same time takes into account the Defendants' early pleas in this case. The government submits that the proposed sentences would be appropriate in light of the factors set forth in § 3553(a).

### 1. The Nature and Circumstances of the Offense

The Defendants engaged in a systematic, long-running conspiracy to operate an unlicensed money service business without obtaining the required state licenses and to launder the proceeds of frauds. More than $250 million in illicit funds were processed through Payza, including the Ponzi schemes described above, which include one in which the Defendants participated. Firoz

---

[2]     This factor does not come into play in this case as restitution is not available in this matter.

Patel and Ferhan Patel, through AlertPay and Payza, operated an illegal money service business and participated in the money laundering conspiracy for more than 10 years – until the government began seizing their ill-gotten gains.

Firoz Patel and Ferhan Patel knew that their conduct was illegal – indeed, they participated in one of the Ponzi schemes whose proceeds were laundered through their own service.  In 2011, the consultant they hired to audit their compliance told them that they were illegally operating in 45 States, yet they continued to operate in the United States.  They took advantage of their agreement with Obopay to operate in states where Obopay was not licensed and contributed to the loss of Obopay's state licenses.  They also ignored cease and desist orders that they received from multiple states.

### 2.   The History and Characteristics of the Defendants

Firoz Patel and Fehan Patel set up money service businesses that laundered money and helped the operators of Ponzi schemes and other fraudsters carry out their crimes.  To their credit, neither has a criminal record.  In this case, the defendants have accepted responsibility at an early juncture in the case.  They have fully admitted their involvement in the offenses to which they have pled guilty and their acceptance of responsibility has allowed the government to devote resources it would have expended in the prosecution of the case to other investigations.  Additionally, the proposed sentences are significant and both individual defendants, upon their release from incarceration, will then be subject to up to three years of supervised release.  Although the string of criminal activity detailed above is highly concerning, especially in light of amount of money laundered over the course of the defendants' conduct, the proposed sentences are a fair and just resolution to this case.

**3.** **The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, To Promote Respect for the Law, To Provide Just Punishment; To Afford Adequate Deterrence; and To Protect the Public from Further Crimes of the Defendant**

Money laundering is a serious criminal offense.  Without money laundering, the frauds underlying the activity at issue in this case could not have been completed.  The money laundering statutes are intended to take the profit out of crime—to target "not only certain unlawful cash-generating schemes, but also the means by which they are practically carried out and hidden from investigators."  *United States v. Iacoboni*, 363 F.3d 1, 6 (1st Cir. 2004); *see also United States v. Bockius*, 228 F.3d 305, 310 (3d Cir. 2000) ("Congress intended to punish [the] use of criminally derived proceeds separately from and in addition to the criminal conduct which produced them.").  As the D.C. Circuit has noted, the gravity of the offense is reflected in the applicable Sentencing Guideline for money laundering:  "'[U.S.S.G.] Section 2S1.1 measures the harm to society that the money laundering causes to law enforcement's efforts to detect the use and production of ill-gotten gains.'"  *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1356 (D.C. Cir. 2002) (quoting *United States v. Allen*, 76 F.3d 1348, 1369 (5th Cir. 1996)).

As this case illustrates, having a money service business that permits the laundering of illegal proceeds is a critical element of the underlying fraud schemes.  For example, for a Ponzi scheme to succeed, there must be a way for the operator to receive and send the proceeds of the scheme.  Firoz Patel and Ferhan Patel, through AlertPay, Payza and Egopay, played that critical role for multiple fraudsters.  In this way, the money laundering that the Defendants committed was not just a discrete crime of its own.  The laundering was also the necessary final step of each underlying fraud offense, needed to ensure the success of the overall criminal scheme.

Given the seriousness of the harm, it is important to impose a sentence that will be sufficient to discourage other would-be money launderers from participating in such schemes.

Indeed, general deterrence is a "crucial factor in sentencing decisions for economic" crimes. *United States v. Morgan*, No. 13-6025, 635 F. App'x 423, 450 (10th Cir. Nov. 6, 2015) (unpublished).  The legislative history of section 3553 documents Congress's emphasis on general deterrence in white-collar crime.  *See* S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259 (need to deter others is "particularly important in the area of white collar crime").  "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotations and citation omitted).  The sentences here should promote respect for the law and send a message that money laundering is a serious offense that warrants real punishment, as Congress and the Guidelines intend.

### 4.   The Need To Avoid Unwarranted Sentencing Disparities

Of the two individual defendants, the government submits that Firoz Patel is more culpable as he ran both AlertPay and Payza.  Regardless of the titles they carried, Firoz Patel was the one in charge.  The defendants have pled guilty to offenses in case number 18-cr-053 that carry a maximum sentence of 60 months.  Neither of the individual defendants has a prior criminal history and all three defendants (including the corporate entity) agreed to plead guilty as soon as they and their counsel had adequately reviewed the extensive discovery in this case.   Under the circumstances, the government submits that a 24 month sentence for Ferhan Patel is a fair sentence. Since Firoz Patel was the more culpable of the brothers, and because he has also pled guilty to Count Four of the Indictment from the Middle District of Tennessee (Criminal Case No. 20-cr-113 in our Court), the government allocutes for a sentence at the top end of the agreed upon range, 52 months.

## CONCLUSION

WHEREFORE, based upon the above and the information reflected in the presentence report and balancing the factors set forth in 18 U.S.C. § 3553, the United States respectfully requests that the Court accept the Rule 11(c)(1)(C) plea agreement in this case, and sentence the defendants as follows:

For defendant MH Pillars, dba Payza: 1) a period of three years of corporate probation; 2) a special assessment of $400; 3) a forfeiture money judgment in the amount of $4,620,100; and 4) the criminal forfeiture of all seized/restrained funds, which properties include – a) approximately $4,000,100 of Payza funds seized in or about November 2013; b) approximately $100,000 of Payza funds seized in or about February 2014; c) approximately $250,000 of Payza funds seized in or about June 2016; d) all funds restrained in or about December 2016 in the United Kingdom from an account at Global Reach Partners related to Payza; e) all funds restrained in or about June 2017 in the United Kingdom from an account at HSBC bank related to Payza; f) $270,000 of Payza funds seized in or about April 2019; g) the Payza.com domain; and h) the AlertPay.com domain.

For Defendant Firoz Patel: 1) 52 months of incarceration; 2) three years of supervised release; 3) a special assessment of $200; 4) a forfeiture money judgment in the amount of $4,620,100; and 5) the criminal forfeiture of all seized/restrained funds, which properties include – a) approximately $4,000,100 of Payza funds seized in or about November 2013; b) approximately $100,000 of Payza funds seized in or about February 2014; c) approximately $250,000 of Payza funds seized in or about June 2016; d) all funds restrained in or about December 2016 in the United Kingdom from an account at Global Reach Partners related to Payza; e) all funds restrained in or about June 2017 in the United Kingdom from an account at

HSBC bank related to Payza; f) $270,000 of Payza funds seized in or about April 2019; g) the Payza.com domain; and h) the AlertPay.com domain.

      For Defendant Ferhan Patel: 1) 24 months of incarceration; 2) three years of supervised release; 3) a special assessment of $100; 4) a forfeiture money judgment in the amount of $4,350,100; and 5) the criminal forfeiture of all seized/restrained funds, which properties include – a) approximately $4,000,100 of Payza funds seized in or about November 2013; b) approximately $100,000 of Payza funds seized in or about February 2014; c) approximately $250,000 of Payza funds seized in or about June 2016; d) all funds restrained in or about December 2016 in the United Kingdom from an account at Global Reach Partners related to Payza; e) all funds restrained in or about June 2017 in the United Kingdom from an account at HSBC bank related to Payza; f) the Payza.com domain; and g) the AlertPay.com domain.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY

_____/s/_____
ARVIND K. LAL
Bar Number: 389496
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7688
Arvind.lal@usdoj.gov